UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6/20/2025
```

-----------------------------------------------------------------X
                                                  :
JEAN-PHILIPPE MAHEU,                              :
                                                  :
                               Petitioner,        :              1:25-cv-836-GHW
                                                  :
                  -against-                        :              ORDER
                                                  :
TWITTER, INC., *et al.*,                          :
                                                  :
                               Respondents.       :
                                                  :
-----------------------------------------------------------------X

GREGORY H. WOODS, District Judge:

One distinguishing facet of the American legal system is its commitment to public access to the trial process.  This legacy of "open justice" is as old as America itself.  *See, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 590 (1980) (Brennan, J. concurring).  Respondents, Twitter, Inc. and X Corp., have asked that the Court seal an arbitral award because it was the product of a confidential arbitration proceeding.  That fact alone does not overcome the presumption of public access to the award safeguarded by the First Amendment to the United States Constitution.  Therefore, Respondents' motion to seal is DENIED.

## I.      BACKGROUND

The life cycle of this case before the Court was short.  On January 28, 2025, Petitioner Jean-Phillippe Maheu filed a petition to confirm an arbitral award issued in his favor.  Dkt. No. 1 (the "Petition").  The Petition asserted that Mr. Maheu had been employed by Twitter, Inc. ("Twitter") and that he had been terminated in November 2022.  *Id.* ¶ 6.  As a result of his termination, Mr. Maheu filed an arbitration demand pursuant to a dispute resolution agreement between him and Twitter.  *Id.* ¶ 7.  On November 22, 2024—just over two months before this action was commenced—the arbitrator entered an award in Mr. Maheu's favor.  *Id.* ¶ 10.

Attached to the Petition was a copy of the arbitral award that Mr. Maheu sought to enforce. Dkt. Nos. 1-1; 5 (the "Award"). Mr. Maheu asked for leave to file the Award under seal. Dkt. No. 3. As justification for the request to seal the award, he wrote only that "Petitioner is seeking to file this Award under seal out of an abundance of caution because he understands that Twitter takes the position that the Award should not be public." *Id.* The Court denied that request on January 29, 2025, noting that Petitioner's rationale was not sufficient to overcome the "potent and fundamental presumptive right of public access" to the Award. Dkt. No. 7. The Court ordered Petitioner to "file the arbitration award on the public docket on February 12, 2025, unless a motion to seal is submitted by any party before that date." *Id.*

According to the docket, Petitioner served Respondents on February 4, 2025. Dkt. Nos. 13, 14. Eight days later, on February 12, 2025, Petitioner filed a stipulation dismissing this action. Dkt. No. 15. The Court endorsed the stipulation the same day. Dkt. No. 16. Presumably understanding that the dismissal relieved him of the obligation to do so, Petitioner did not file the Award on the docket as the Court had previously directed.

On February 21, 2025, reporter Kate Conger and The New York Times Company (together, "The Times") filed a letter requesting that the Court unseal the Award. Dkt. No. 17. The Court responded with an order extending the deadline for a party to file a motion to seal the Award. Dkt. No. 18. As the Court explained, "because this action was dismissed before the deadline to file a motion to seal the Award had passed, the parties in this case may have believed that they did not need to file a motion to seal the Award." *Id.* at 2.

Mr. Maheu filed a letter on March 6, 2025, asking that the Court redact the "dollar amount of the award." Dkt. No. 25. He requested "this partial redaction for privacy purposes and submits that the dollar amount of this particular award is not of great public interest or importance, in contrast perhaps to the substance of the decision through which the award was issued." *Id.*

Twitter filed a motion to seal the Award on March 21, 2025.  Dkt. No. 28 ("X Mot.").  The Times responded on March 28, 2025.  Dkt. No. 31 ("Times Rep.").

## II.    LEGAL STANDARD

The parties agree that there is a First Amendment right of access to the Petition and the Award that was attached to it.  X Mot. at 2 (arguing that "several factors counsel against public disclosure of the Final Award and constitute higher values that outweigh the First Amendment right of public access.").[1]  When a First Amendment right of access attaches to a document, "there exists a qualified, presumptive First Amendment right of public access to the proceeding or document." *Courthouse News Service v. Corsones*, 131 F.4th 59, 67 (2d Cir. 2025).  "[I]f such a presumptive right exists, the proponent of closure must establish through specific, on the record findings . . . that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (internal quotations and citations omitted).  "[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).  "Broad and general findings by the trial court, however, are not sufficient to justify closure." *Id.*

The First Amendment right of access to documents is analytically distinct from the common law right of access to judicial documents.  "In contrast to the First Amendment right, the common law right attaches with different weight depending on two factors: (a) 'the role of the material at

---

[1] The Second Circuit has articulated two approaches to determine whether the First Amendment right attaches to a document.  "To determine whether this First Amendment right attaches in circumstances such as the one before us, we look, first, to whether 'experience and logic' support making the document available to the public.  That is, we consider (a) whether the documents 'have historically been open to the press and general public' (experience) and (b) whether 'public access plays a significant positive role in the functioning of the particular process in question' (logic)." *U.S. v. Erie Cnty., N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006)).  "Petitions to confirm arbitration awards . . . are subject to the presumption of public access under the First Amendment because '[i]n circumstances where an arbitration award is confirmed, the public in the usual case has a right to know what the Court has done.'" *Alexandria Real Est. Equities v. Fair*, 2011 WL 6015646 at *2 (quoting *Glob. Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co.*, 2008 WL 1805459 at *2–*3 (S.D.N.Y. 2008)).

issue in the exercise of Article III judicial power' and (b) 'the resultant value of such information to those monitoring the federal courts.'" *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164–65 (2d Cir. 2013) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). "In addition to the weight afforded to the presumptive right of access, the common law right is balanced against countervailing interests favoring secrecy. Because of these differences between the common law right and the First Amendment right, it is necessary to keep the two standards conceptually distinct when analyzing a particular proceeding or document." *Id.*

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action[.]" *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). To meet its heavy burden, the moving party "must offer specific facts demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Wells Fargo Bank, N.A. v. Wales LLC*, 993 F. Supp. 2d 409, 413 (S.D.N.Y. 2014) (quotation omitted). "[T]he decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 599 (1978).

### III.    ANALYSIS

Respondents have failed to meet their burden to justify sealing of the Award. The public's right of access to the Award is presumptively protected by the First Amendment. Respondents have not presented a sufficient basis for the Court to find that the presumption has been overcome. The basis for Respondents' request that the Court seal the Award in its entirety is the fact that the Award was the product of a confidential arbitration process. Respondents argue that the "Second Circuit has repeatedly affirmed the 'FAA's strong policy protecting the confidentiality of arbitral proceedings,' which is a 'paradigmatic aspect of arbitration.'" X. Mot. at 2 (quoting *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 70, 71 (2d Cir. 2023)). And, Respondents contend, the Award

"contains, among other things the 'contents' and 'results' of the underlying arbitration, which the parties agreed to keep confidential." *Id.*

Respondents' argument relies heavily on the Second Circuit's decision in *Stafford*.[2]  In *Stafford*, the Court of Appeals reversed a trial court's decision to unseal an arbitral award that had been submitted in connection with a petition for arbitration.  The Second Circuit analyzed the application to seal using the framework outlined in *Mirlis v. Greer*, which applies to the evaluation of the common law presumption of public access to judicial documents.[3]  *Stafford*, 78 F.4th at 69.  Applying that test, the Second Circuit determined that the arbitral award was a "judicial document," but that the presumption of public access was "weaker here because the petition to confirm the award was moot," and thus the award "played no role in the exercise of Article III judicial power . . . ."  *Id.* (internal quotations and citations omitted).

The Second Circuit ruled that the trial court had erred by "failing to consider and give appropriate weight to the 'countervailing factors' at issue."  *Id.* at 70.  The court pointed to two issues that the district court had failed to consider properly.  First, the Second Circuit noted that "[i]n weighing disclosure, courts must consider not only the sensitivity of the information and the subject but also how the person seeking access intends to use the information."  *Id.* (internal quotations omitted).  This consideration weighed against sealing the award in *Stafford* because of the plaintiff's "improper effort to evade the confidentiality provision of the [arbitration] Agreement."

---

[2] Respondents recognize that Stafford is only "instructive," not dispositive authority.  X. Mot. at 2.

[3] In *Mirlis v. Greer*, the Second Circuit summarized the three steps that a court should follow to analyze whether the presumption of public access attaches to a document under the common law right of public access and bars disclosure.  *See* 952 F.3d 51, 59 (2d Cir. 2020).  First, the Court determines whether the document is a "judicial document," namely, "one that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process."  *Id.* (quotation omitted).  Second, the Court "proceeds to 'determine the weight of the presumption of access to that document.'"  *Id.* (quoting *United States v. Erie Cnty.*, 763 F.3d 235, 239, 241 (2d Cir. 2014)).  "The weight to be accorded is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'"  *Id.* (quoting *Amodeo*, 71 F.3d at 1049).  "Finally, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access."  *Id.*  The court in *Stafford* did not explain why it applied the common law test rather than the First Amendment test.

*Id.* at 69.  The plaintiff sought to misuse the litigation process to evade the confidentiality protection for her arbitral award "to enable her counsel to use the award in the litigation of ADEA claims of other former IBM employees." *Id.* at 71.  The Circuit opined that "[s]uch efforts to evade the confidentiality provision to which Stafford agreed in her arbitration agreement are a strong countervailing consideration against unsealing." *Id.*

Second, the Second Circuit held that the trial court had erred "because it failed to weigh the FAA's strong policy in favor of confidentiality." *Id.* at 69.  Noting that "[c]onfidentiality is a paradigmatic aspect of arbitration," *id.* at 71 (internal quotation omitted), the court stated that "We have affirmed decisions to keep judicial documents subject to confidentiality provisions in arbitration or settlement agreements under seal." *Id.*  The Second Circuit then concluded that:  "The district court's conclusion that 'the enforcement of contracts . . . does not constitute a higher value that would outweigh the presumption of public access to judicial documents' did not fully account for the context of Stafford's unsealing motion." *Id.*  "In short, the presumption of access to judicial documents is outweighed here by the interest in confidentiality and because Stafford's apparent purpose in filing the materials publicly is to launder their confidentiality through litigation." *Id.*

Three aspects of the decision in *Stafford* must be highlighted here.  First, the Second Circuit did not create a categorical rule that the confidential nature of an arbitral award overcomes the presumption of public access to judicial documents, even in the context of the common law presumption.  Second, the court in *Stafford* considered the application to seal using the common law standard, which permitted it to determine that the weight of the presumption was low.  And third, it reminded district courts to consider the purpose for which a request to seal or unseal a document is made.

The preservation of the confidentiality of an arbitral award, by itself, is not a "higher value" that overcomes the presumption of access afforded by the First Amendment.  *See, e.g., Lohnn v. Int'l*

*Bus. Machines Corp.*, 2022 WL 36420 at *13 (S.D.N.Y. 2022) ("[T]he interest in arbitral confidentiality has never been understood to alone be sufficient to overcome the public's right to access judicial documents when otherwise confidential arbitral documents are submitted to a federal court in connection with a request for the Court to enter judgment or issue a dispositive order.") (collecting cases); *Park Ave. Life Ins. Co. v. Allianz Life Ins. Co. of N. Am.*, 2019 WL 4688705 at *3 (S.D.N.Y. 2019) (noting that the existence of a confidentiality agreement, on its own, is "insufficient to overcome the First Amendment presumption of access" (quoting *Alexandria Real Est. Equities, Inc. v. Fair*, 2011 WL 6015646 at *3 (S.D.N.Y. 2011))); *Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co.*, 2012 WL 3583176 at *6 (S.D.N.Y. 2012) ("Courts in this District have held that the mere existence of a confidentiality agreement covering judicial documents is insufficient to overcome the First Amendment presumption of access, and have consistently refused to seal the record of a petition to confirm an arbitration award, notwithstanding the existence of such an agreement." (internal quotation marks and citation omitted)); *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 2023 WL 5956144 at *5 (S.D.N.Y. 2023).

Respondents offer no other reason for the Court to seal the Award in its entirety in this case. Here there is no indication that Petitioner had an improper purpose in filing the petition. Nor does any party argue that The Times seeks to unseal the Award for improper purposes. To grant Respondents' motion to seal the Award in its entirety on this record would require the Court to establish a general rule that the confidential nature of an arbitral award suffices on its own to override the First Amendment right of access to a document filed with the Court. The Court has no basis upon which to do so. *See, e.g.*, *Lohnn*, 2022 WL 36420, at *13.[4]

---

[4] Respondents argue that the presumption of public access to the Award is "weak because Petitioner voluntarily dismissed his petition before the Court considered it." X Mot. at 2. But this argument is misplaced because the Court is evaluating a document to which the First Amendment, rather than the common law, test applies. "In contrast to the First Amendment right, the common law right attaches with different weight . . . ." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164–65 (2d Cir. 2013). All of the cases that Respondents cite in support of this argument regarding the weight

The fact that the Award contains financial information regarding Petitioner does not justify sealing the Award.  As described above, Petitioner asks that the Court redact the dollar amount of his financial award.  Dkt. No. 25.  And Respondents argue that the "Award also includes private financial information about Petitioner that warrants sealing."  X Mot. at 2.  The Court acknowledges that courts "routinely permit parties to redact sensitive financial information" from public filings. *Graczyk v. Verizon Commc'ns, Inc.*, No. 18 Civ. 6465 (PGG), 2020 WL 1435031, at *9 (S.D.N.Y. Mar. 24, 2020) (collecting cases).  But neither Petitioner nor Respondents have provided the Court with an affidavit, or even a factual proffer, explaining the nature of the harm to Petitioner should the amount of the award be disclosed to the public in this case.  And the Court observes that Petitioner did not assert any interest in sealing any portion of the Award when it was first filed.  The fact that Petitioner did not ask for the information to be sealed initially suggests that the harm to him from disclosure of the information is not substantial.  Lacking any factual basis to conclude that the disclosure of the amount of the award to Petitioner will result in concrete harm to him, the Court cannot make the specific finding required to overcome the presumption of public access to the Award.

Respondents have not provided the Court with sufficient justification to warrant overcoming the First Amendment presumption of public access to the Award.  Thus, Respondents' motion is denied.

---

to be afforded the presumption apply the common law test.  X Mot. at 2.

## IV.     CONCLUSION

Respondents' motion to seal the Award is denied.  Barring further order of the Court, the Clerk of Court is directed to modify the viewing level of Dkt. No. 5 and 28 to permit public access to those documents on June 26, 2025.  The Clerk of Court is further directed to terminate the motion pending at Dkt. No. 28.

SO ORDERED.

Dated:  June 20, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge